**In re David R. WOOD, Estelita M. Wood, Debtors.**

**Bankruptcy No. 2-88-01538.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Sept. 13, 1988.

Robert M. Hoskinson, Columbus, Ohio, for debtors.

Frank M. Pees, Worthington, Ohio, Chapter 13 Trustee.

Jeff M. Kellner, Columbus, Ohio, for Chapter 13 Trustee.

Charles M. Caldwell, Columbus, Ohio, Asst. U.S. Trustee.

## ORDER ON OBJECTION TO CONFIRMATION

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on an objection to confirmation of the Chapter 13 plan proposed by debtors David and Estelita Wood. The objection was filed by Frank M. Pees, the Chapter 13 Trustee ("Trustee"), and was heard by the Court on June 6, 1988.

The Court has jurisdiction in this matter under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This matter, involving the confirmation of a Chapter 13 plan, is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L).

The Woods filed a petition, plan and schedules under the provisions of Chapter 13 of the Bankruptcy Code on March 23, 1988. As amended prior to the meeting of creditors, the plan calls for monthly payments to the Trustee of $1,351 until October, 1988 and $1,407 thereafter for payment in full of allowed secured and priority unsecured claims and a 22% dividend to allowed general unsecured claims. The plan is to last approximately fifty-six months. During the first three years of the plan income tax refunds and certain proceeds from a medical insurance policy are also to be paid to the Trustee to increase the dividend to general unsecured claims.

The Trustee's objection to the proposed plan is in three parts. First, the Trustee asserts that the indefinite value given to assets in Estelita Wood's vested pension plan causes the Trustee to be unable to determine if the plan proposes to pay creditors at least as much as they would receive had this case been filed under Chapter 7 of the Bankruptcy Code. See 11 U.S.C. § 1325(a)(4). The Trustee further challenges the debtors' classification as priority unsecured claims all tax obligations to the Internal Revenue Service for the years 1980–1985 and 1987 and maintains that it would be discriminatory to pay in full any of those tax obligations which are not properly priority unsecured claims. Finally, the Trustee maintains that certain of the debtors' budgeted expenses are not reasonably necessary for their support and, therefore, unless funds dedicated to those expenses are contributed, the plan does not comply with § 1325(b).

In challenging the Trustee's assertions, the debtors indicate that the value of Estelita Wood's assets in her pension plan is $3,041. That amount does not cause this plan to fail the best interests of creditors' test of 11 U.S.C. § 1325(a)(4), and the Trustee's objection on that ground is therefore overruled.

The debtors also state that the plan proposes only to pay priority tax claims in full and any tax claims which do not so qualify are to be paid the same dividend as other general unsecured claims. Because the debtors' original plan explicitly provides that only claims entitled to priority are to be paid as such, and the plan amendment of May 20, 1988 apparently supplements rather than replaces the terms of the original plan, the Court finds that the Trustee's objection on that ground must be overruled.

The final portion of the Trustee's objection is premised upon the provisions of 11 U.S.C. § 1325(b). Upon objection, that statute requires that the debtors' plan provide for payment into the plan of all projected disposable income over a period

of three years. The standard thereby created is known as the "disposable income test."

The Woods have monthly net income of approximately $4,031. The monthly expenses specifically challenged by the Trustee include $1,004 for the mortgage against their residence, $100 for recreation and entertainment, $65 for hair care, $400 for food for a family of two adults and one teenager, $110 for business lunches for Mr. Wood, $29 for lawn care and $43 for a church tithe. Such expenditures, when viewed in light of the relatively small dividend proposed for general unsecured creditors in this case, are alleged by the Trustee to be in excess of amounts reasonably necessary for support of the debtors and their dependent.

Section 1325(b), recently added to the Bankruptcy Code as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, has been the subject of only one prior opinion by this Court. See *In re Compton*, 88 B.R. 166 (Bankr.S.D.Ohio 1988). In *Compton*, the same dilemma appeared which is present in this case. Specifically, absent unusual or egregious circumstances, the Court believes that an objection to confirmation based upon the "disposable income test" is not valid if the length of the proposed plan exceeds 36 months, and after the time value of the extended repayment period is considered, the proposed monthly payments to the Trustee produce a significantly higher dividend for general unsecured claimants than would be paid if the objection to confirmation were sustained, all income not reasonably required for support were paid into the plan and the debtors chose to exercise their right to limit such payments to a 36–month period. In other words, the debtors cannot elect to retain disposable income and simply "string out" their payments, but they may maintain a more comfortable life-style, within reason, if unsecured claimants are not unduly harmed thereby.

In the exercise of the duty imposed upon it by Congress, the Court finds that certain of these debtors' budgeted expenses exceed those reasonably necessary for support of their family unit. Specifically, monthly budgeted amounts to the extent of $100 for food, $29 for lawn care, $50 for recreation and $30 for hair care, could be added to the monthly payment to be made to the Trustee under the test of § 1325(b). However, the Court finds that the monthly tithe of $43 and the mortgage payment are not so inappropriate that modification of those sums, as currently budgeted, is required.

Having decided that a portion of the Trustee's objection has merit, the Court is unable to determine whether sustaining the objection and forcing an extra $209 each month into the plan would benefit general unsecured claimants significantly more than the plan as proposed. The reason for such uncertainty is the yet unclear status of the claim of the Internal Revenue Service, asserted in the amount of $66,541. Without a more accurate and considered analysis by the debtors of what portion of that claim must be paid in full as a priority unsecured claim, as required by 11 U.S.C. § 1322(a)(2), the Court cannot measure the effect upon general unsecured claimants of sustaining the Trustee's objection.

Based upon the foregoing, the Court finds that the debtors should be given twenty (20) days to present to the Court and serve upon the Trustee their best assessment of the amount of any tax claims filed in this case which may be objected to at a later time on the basis that such claims should not be allowed as priority unsecured claims. The debtors also shall indicate the amount of asserted tax claims which will remain unchallenged as priority unsecured claims. Once that information is before the Court, the merit of the Trustee's objection will be determined consistent with this opinion. If the debtors fail to provide the requested information, further orders will be made as required.

IT IS SO ORDERED.