**In re Alan J. SAUNDERS and Della C. Randall–Saunders, Debtors.**

**Bankruptcy No. 96–16009–WCH.**

United States Bankruptcy Court, D. Massachusetts.

July 17, 1997.

Richard Askenase, Chapter 13 Trustee, Boston, MA.

Carolyn A. Bankowski, Coffey & Shea, Boston, MA, for debtors.

Susan M. Poswistilo, Assistant U.S. Attorney, Boston, MA, for U.S.

## DECISION ON TRUSTEE'S MOTION TO DISMISS

WILLIAM C. HILLMAN, Bankruptcy Judge.

The matter before me is the Chapter 13 Trustee's (the "Trustee's") motion to dismiss the Chapter 13 petition of Alan J. Saunders and Della C. Randall–Saunders (the "Debt-

ors"). At issue is the question of whether Debtors may tithe to their church as proposed in their Chapter 13 plan.

The facts are not in dispute and I will adopt them, as they appear in the motion, opposition, and Debtors' affidavit in opposition, as my findings of fact.

The proposed plan provides for a 10% dividend to unsecured creditors, payable over 48 months in installments of $215 per month. The Debtors' Schedule J indicates a monthly expense of $400 for charitable contributions, which the Debtors regard as a tithe to their church "mandated by Scripture", although tithing is not part of the doctrine of their church.

The Trustee made a related series of arguments against the propriety of the tithing expense. He contended that tithing is not reasonably necessary for the Debtor's maintenance and support. 11 U.S.C. § 1325(b).[1] To the extent that the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb ("FRA") mandated a different result, the Trustee urged me to join with those judges who have held RFRA to be unconstitutional. The Debtors relied primarily but not exclusively on RFRA to sustain their objection to the Trustee's motion.

The United States has a right to intervene in any action "in a court of the United States" where it is not a party and the constitutionality of "any Act of Congress affecting the public interest is down in question." 28 U.S.C. § 2403. While there is some disagreement as to whether the bankruptcy courts are courts of the United States within the definition of 28 U.S.C. § 451 in various contexts,[2] certification of the issue

---

1. "(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
   (a) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
   (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.
   (2) For purposes of this subsection, "disposable income" means income which is received by

the debtor and which is not reasonably necessary to be expended—
   (A) for the maintenance or support of the debtor or a dependent of the debtor; and
   (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business." 11 U.S.C. § 1325(b).

2. *See, e.g., In re Perroton,* 958 F.2d 889 (9th Cir.1992); *In re Melendez,* 153 B.R. 386 (Bankr. D.Conn.1993); *In re Richardson,* 52 B.R. 527 (Bankr.W.D.Mo.1985).

was given to the United States Attorney General under the first cited statute in accordance with Fed.R.Civ.P. 4. The United States responded by intervening in order to defend the constitutionality of RFRA. It further moved to stay consideration of the matter pending the decision of the United States Supreme Court in *Flores v. City of Boerne,* in which *certiorari* had been granted. I granted the motion to stay.

Recently the United States Supreme Court held that RFRA was unconstitutional. *City of Boerne v. Flores,* —— U.S. ——, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). As a result I now annul the stay previously granted, and excuse the United States from further participation in this matter as the constitutional issue has been resolved. The Trustee's argument against RFRA has been upheld by the highest court of the land.

■ The Debtors, however, also asserted their right to tithe as part of a Chapter 13 plan without regard to RFRA. This requires that I consider the applicable pre-RFRA case law.

Rather than citing tens of cases, I will refer to a series of excellent and comprehensive law review treatments of the issue. The pre-RFRA legal background is well summarized in the first of them:

> In 1984 Congress adopted the Bankruptcy Amendments and Federal Judgeship Act (BAFJA), part of which was designed to stop what many perceived to be consumer abuse of the Bankruptcy Code. The most important consumer bankruptcy change was the addition of an explicit ability-to-pay test to the Chapter 13 plan confirmation requirements. This new test provides that if a trustee or unsecured creditor objects to the debtor's Chapter 13 plan, the court must deny confirmation of the plan unless it finds that the debtor will apply all his projected disposable income for the next three years to plan payments. For the consumer, disposable income is income received by the debtor that 'is not reasonably necessary to be expended ...

for the maintenance or support of the debtor or a dependent of the debtor.'....

> Most courts have ruled summarily that money set aside for religious tithing is disposable income, and thus the debtor must forgo this expenditure in order to receive confirmation of his Chapter 13 plan.

Bruce Edward Kosub and Susan K. Thompson, *The Religious Debtor's Conviction to Tithe as the Price of a Chapter 13 Discharge,* 66 Tex. L.Rev. 873 (1988) (footnotes omitted). That article cites no cases from the First Circuit.[3]

More recent law review articles brings the issue closer to the present and focus, *inter alia,* on tithing in Chapter 13 plans. *See, e.g.,* Oliver B. Pollak, *"Be Just Before You're Generous": Tithing and Charitable Contributions in Bankruptcy,* 29 Creighton L.Rev. 528 (1996) ("Pollak" hereafter). Pollak catalogs the POST–BAFJA cases involving Chapter 13 plans which included tithing as reasonably necessary expenses. In summary, Pollak described the situation as follows:

> Three categories of cases have emerged. First, the courts would not permit tithing and dismissed the case because the tithe was excessive, distribution to unsecured creditors was too small, debtor wrongdoing occurred just prior to filing, or budgets were suspect. Second, in the totality of the circumstances analysis, the court examined the following: 1) the level of income and expenses; 2) the size of disposable income; 3) the character of secured and unsecured debt; 4) the debtors' prefiling activities; 5) boats, expensive cars, and repossessions; 6) whether the debt could be resolved without recourse to bankruptcy; 7) extenuating or mitigating circumstances; and 8) the percentage distribution of dividend to unsecured creditors under a variety of budget scenarios. The courts' tithing analysis was not guided by skepticism or hostility, but rather was based on the vitality of tithing to the debtors' way of life. Questions asked by the court often

---

**3.** For a contrary academic opinion see Donald R. Price and Mark C. Rahdert, *Distributing the First Fruits: Statutory and Constitutional Implications* *of Tithing in Bankruptcy,* 26 U.C. Davis L.Rev. 853, 931, 934 (1993) (tithing a reasonably necessary expense).

included the following: 1) what was the scale of tithing; 2) how long had the debtor been tithing; 3) how sincere and indispensable was the tithing to the debtors' life style and mental health; 4) what loss of religious community contact would result from ceasing tithing; and 5) what impact would tithing have on the unsecured creditors. Finally, there is some consensus that debtors wishing to continue to tithe after the filing of a bankruptcy petition are better suited for relief under Chapter 7 of the Bankruptcy Code.

Pollak at 553.

Another law review note takes a more dramatic view:

In several chapter 13 bankruptcy cases, tithing individuals have sought permission from the bankruptcy courts to repay a lesser amount of their debt than the courts would make comparable non-tithing individuals repay. The tithing debtors have argued that, without special treatment on the basis of their religious practice, they would have to stop paying tithes to receive bankruptcy relief. In most cases, the bankruptcy courts have properly refused to accommodate the tithing practice of such debtors. By subjecting religious charity to the same strict repayment provisions that limit other forms of discretionary spending by debtors receiving chapter 13 relief, the bankruptcy courts have made tithing debtors repay the same amount of debt that similar non-tithing debtors must repay.

This Note has argued that the Establishment Clause of the Constitution mandates the bankruptcy courts' seemingly hardhearted refusal to accommodate the tithing practice of chapter 13 debtors. Were the bankruptcy court to shift course by exempting tithes from the § 1325(b) disposable-income test, they would impermissibly favor religious interests over nonreligious interests (unless they extended the same treatment to secular forms of charity) by effectively forcing the debtor's creditors to contribute their own money to the debtor's church and by entangling church and state. Thus, as long as the bankruptcy courts do not pronounce a far-reaching right of bankrupt persons under § 1325(b) to give an unlimited amount of their income to charities, both secular and sectarian, rather than repaying their creditors, the courts have no flexibility to allow debtors, on the basis of their religion, to prefer their divine creditor(s) over their earthly ones.

Note, *Tithing in Chapter 13—A Divine Creditor Exception to Section 1325?*, 110 Harv. L.Rev. 1125, 1141 (1997).

I agree with the last quoted article which I find to be entirely consistent with Justice Stevens' cogent concurring opinion in *City of Boerne, supra.*[4] This conclusion maintains the Chapter 13 system as neutral with regard to religion.[5] I hold that tithing is not a reasonable expense for the maintenance or support of a debtor for purposes of 11 U.S.C. § 1325(b)(2).

For that reason, I cannot approve the Chapter 13 plan because the Debtors do not apply all of their disposable income to make plan payments. 11 U.S.C. § 1325(b)(1)(B). As such, I could grant the Trustee's motion to dismiss the Debtors' Chapter 13 petition. The Debtors, however, may wish to amend their plan. To accommodate the latter possibility, I will treat the motion to dismiss as an objection to the plan and sustain it on that basis.

I will issue a separate order sustaining the objection and authorizing the Debtors to file an amended plan within thirty days.

---

**4.** "If the historic landmark on the hill in Boerne happened to be a museum or an art gallery owned by an atheist, it would not be eligible for an exemption from the city ordinances that forbid an enlargement of the structure. Because the landmark is owned by the Catholic Church, it is claimed that RFRA gives its owner a federal statutory entitlement to an exemption from a generally applicable, neutral civil law. Whether the Church would actually prevail under the statute or not, the statute has provided the Church with a legal weapon that no atheist or agnostic can obtain. This government preference for religion, as opposed to irreligion, is forbidden by the First Amendment." —— U.S. at —— ——, 117 S.Ct. at 2167–69.

**5.** *See In re Lees,* 192 B.R. 756 (Bankr.D.Mont. 1994).