**In re Johnny Earl ELROD, Lisa Carol Elrod, Debtors.**

No. 01–16596.

United States Bankruptcy Court,
E.D. Tennessee,
Winchester Division.

Dec. 6, 2001.

---

Trudy McKelvey Edwards, Winchester, TN, for debtors.

Jerre M. Hood, Frank C. Lynch, Winchester, TN, Sharon N. Watson, Shapiro & Kirsch, Memphis, TN, for creditors.

## MEMORANDUM OPINION

R. THOMAS STINNETT, Bankruptcy Judge.

The chapter 13 trustee has objected to confirmation of the debtors' proposed plan. The objection is based on the plan's treatment of Citifinancial's claim, which is secured by a second mortgage on the debtors' home. The plan does not propose to pay Citifinancial according to the terms of the mortgage. Instead, it proposes to pay Citifinancial $325 per month with interest at 10%. The payment is about $25 per

month more than the pre-petition mortgage payment, but the 10% interest rate is much lower than the pre-petition mortgage rate. The higher payment and the lower interest rate will allow the debtors to pay off the debt to Citifinancial in a much shorter period of time than if they simply continued making payments as called for in the mortgage. Citifinancial objected to this treatment under the plan but withdrew the objection. At the confirmation hearing, debtors' attorney indicated Citifinancial is willing to rewrite the loan to conform to the lower interest rate.

The trustee objects on the ground that the plan takes $25 per month that should go to the unsecured creditors and pays it to Citifinancial so that the debtors can increase their equity in the mortgaged property more rapidly. The trustee's theory is that the plan would be confirmable if it simply provided for paying the lower payment set by the mortgage and then the $25 could be used to pay unsecured claims.

The trustee bases his objection expressly on the good faith requirement for confirmation. 11 U.S.C. § 1325(a)(3). The objection, however, also raises the more technical ground that the plan may not comply with the disposable income test. 11 U.S.C. § 1325(b). This ground for objecting is not clear from the form used by the trustee; the form contains a list of specific objections that does not include the disposable income test. It falls into the "Other" category, which is where the trustee put it, though he did not cite the statute. Since disposable income test is more technical, the court will deal with it first.

If the debtors' plan provided for full payment of unsecured claims, the court would not be concerned with the disposable income test. 11 U.S.C. § 1325(b)(1)(A). But since this plan provides for a dividend of 25% on unsecured

claims, the test applies. 11 U.S.C. § 1325(b)(1)(B).

The disposable income test requires the debtors to contribute to the plan all their projected disposable income for 36 months. Disposable income does not include the debtor's expenses that are reasonably necessary for the support and maintenance of the debtor and the debtor's dependents. In other words, the reasonably necessary expenses are deducted from income to determine disposable income. 11 U.S.C. § 1325(b)(2).

■ The monthly mortgage payment on a debtor's residence is generally considered a reasonably necessary expense and is deducted from income to determine disposable income. *In re Presley*, 201 B.R. 570 (Bankr.N.D.Fla.1996); 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 165.1. The trustee contends that the plan payment to Citifinancial includes $25 that is not a reasonably necessary expense because the debtors could have a confirmable plan that paid only the mortgage payment, instead of $25 more.

The court assumes the trustee is correct on the last point; the plan would be confirmable if it simply continued the monthly mortgage payments. 11 U.S.C. §§ 1322(b)(2) & 1322(b)(5); 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 129.1.

■ The trustee's objection brings up a curious problem with the wording of the disposable income test. The test requires all the debtor's projected disposable income to be used "to make payments under the plan." 11 U.S.C. § 1325(a)(1)(B). This allows the debtors to argue that the trustee has no objection with regard to the $25 in question because it is being used to make payments under the plan, specifically the payments to Citifinancial.

■ If this argument is correct, then the disposable income test has a very limited purpose. It only requires payments to be made under the plan. It does not allow the court to force a debtor to pay unsecured claims instead of unnecessary expense. The courts have generally rejected this argument because it contradicts the purpose of the disposable income test and would make it largely meaningless. *In re Lindsey,* 122 B.R. 157 (Bankr.M.D.Fla. 1991); *In re Hedges,* 68 B.R. 18 (Bankr. E.D.Va.1986); *see generally* 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 165.1 at 165–13–165–16. This court agrees.

■ This brings the court to the question of whether the extra payment to Citifinancial is a reasonably necessary expense or disposable income. An extra payment on a secured debt may not be a reasonably necessary expense. *In re Schnabel,* 153 B.R. 809 (Bankr.N.D.Ill.1993). In this case, however, the court need not consider that problem. The court can assume that $25 of the monthly payment to Citifinancial is disposable income instead of a reasonably necessary expense. As explained below, the plan still satisfies the disposable income test.

The disposable income test requires the debtors to commit to the plan all their disposable income for 36 months. 11 U.S.C. § 1325(b)(2). The debtors' proposed plan will be $900 short of satisfying this requirement after the first 36 months of the plan, (based on the court's assumption that $25 of the monthly payment to Citifinancial is disposable income). But the proposed plan calls for 60 months of payments. Can the plan satisfy the disposable income test by paying the shortage in the additional 24 months of the plan? Other courts have held that if the debtor's payments after the first 36 months will pay the shortage plus interest, then the plan passes the disposable income test. Interest is added because unsecured creditors would not receive the money in the first 36 months of the plan. *In re McKown,* 227 B.R. 487 (Bankr.N.D.Ohio 1998); *In re Wood,* 92 B.R. 264 (Bankr. S.D.Ohio 1988); *In re Gonzales,* 157 B.R. 604 (Bankr.E.D.Mich.1993). The court agrees with this reasoning.

During the additional 24 months of the proposed plan, the debtors will pay much more than the $900 plus interest. The debtors' payments to the trustee are $600 every two weeks, which works out to $1,300 per month. The plan payments on secured claims total about $1,100 per month. This leaves about $200 per month for payment of the trustee's expenses, the fee for the debtors' attorney, other priority unsecured claims, and non-priority unsecured claims. The trustee's expenses run about 3%. The debtors did not schedule any priority unsecured claims, and no entity has filed such a claim. The debtors' attorney has requested a fee of $1,000. The attorney's fee should be paid well before the end of the first 36 months of the plan. In the final 24 months of the plan, the debtors' payments will pay much more on unsecured claims than the $900 shortage plus interest. The plan also provides that any tax refunds due to the debtors will be paid into the plan. Thus, the plan easily satisfies the disposable income test.

■ This brings the court to the trustee's objection on the ground that the plan was not proposed in good faith. This objection also relates to the plan's treatment of Citifinancial's claim. According to the trustee, the plan is unfair to the unsecured creditors so that the debtors can obtain a large reduction in the term of their second mortgage. Again, the theory is that the plan could be confirmed if it provided for payment of the mortgage payment and that would allow the additional $25 to go toward payment of unsecured claims.

■ For the purpose of deciding whether a chapter 13 plan was proposed in good faith, the court must consider the totality of the circumstances; this generally includes numerous factors that have been relevant in other cases. *Metro Employees Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah)*, 836 F.2d 1030 (6th Cir.1988). In his treatise, Judge Lundin has organized the various factors as follows:

1. Frequency of filing bankruptcy
2. Accuracy of petition, schedules, statement and testimony
3. Burden of administration
4. Motivation and sincerity in filing Chapter 13
   a. Prepetition conduct and misconduct
   b. Debt nondischargeable in Chapter 13 or Chapter 7 case
   c. Timing of petition to interrupt other events
   d. Nature and extent of financial problems
5. Degree of effort
   a. Duration of plan
   b. Percentage repayment of debt
   c. Income, expenses, lifestyle and luxuries

3 Keith M. Lundin, *Chapter 13 Bankruptcy* § 178.1 at 178–1.

The trustee's only evidence of bad faith is the reduction in the percentage paid on unsecured claims as a result of paying Citifinancial about $25 per month more than the mortgage payment.

The debtors scheduled unsecured debts totaling about $30,000. This includes the unsecured portion of partially secured debts, as shown by the schedules. Many of the unsecured debts are medical bills (21 of 33); they total about $11,400. Charges on eight credit card accounts make up most of the remaining unsecured debt; they total $14,100. The four other debts total about $1,400.

The debtors' expense statements do not reveal any excess spending or any reserve taken from their disposable income. Indeed, the debtors have allocated relatively small amounts to most of their monthly expenses. Likewise, the schedules do not reveal that the debtors have spent extravagantly in the past or that they are attempting to retain luxury items by paying off the debts they secure. The debtors own two automobiles, eight years old and four years old, that are both subject to security interests. The statement of affairs reveals that Mr. Elrod has changed employment and is making substantially less in 2001 than he did in the prior two years.

■ The plan proposes payment of 25% on unsecured claims, which would be about $7,500. The trustee is complaining that the debtors should pay another 5%, specifically the $1,500 they propose to pay Citifinancial ($25 per month for 60 months). The percentage to be paid on unsecured claims is only one factor among many when the court must decide whether a plan was proposed in good faith. *In re Caldwell*, 851 F.2d 852 (6th Cir.1988); *Metro Employees Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah)*, 836 F.2d 1030 (6th Cir.1988). The proposed payments to Citifinancial will cause a slight reduction in the percentage that the debtors might pay to unsecured creditors based on a 60 month plan. This slight reduction is not sufficient evidence by itself to show lack of good faith by the debtors. *In re Martin*, 189 B.R. 619 (Bankr.E.D.Va.1995); *In re Ristic*, 142 B.R. 856 (Bankr.E.D.Wis.1992).

Furthermore, the evidence the court has taken from the schedules does not support the trustee's argument that the plan was not proposed in good faith. There is noth-

ing in the schedules to support a finding of bad faith.

Citifinancial's acceptance of the proposed plan amounts to a refinancing of the mortgage. It will benefit the debtors greatly by reducing the total amount they must pay to retire the mortgage. The trustee wants the debtors to give this up so that unsecured creditors will receive the additional sum of $25 per month. The proposed plan, far from being in bad faith, represents an unusually good financial rehabilitation of the debtors at very little cost to the unsecured creditors. The court will enter an order denying the trustee's objection and confirming the plan.

This Memorandum constitutes findings of fact and conclusions of law as required by *Fed.R.Bankr.P.* 7052.

### ORDER

In accordance with the Memorandum Opinion entered this date,

It is ORDERED that the trustee's objection to confirmation is OVERRULED and the plan shall be confirmed by separate order.